321 P.3d 439

**STATE of Arizona, Appellee,**

v.

**Jonathan Elijah LARGE, Appellant.**

**No. 1 CA–CR 13–0115.**

Court of Appeals of Arizona, Division 1.

March 25, 2014.

Arizona Attorney General's Office By Jana Zinman, Phoenix, Counsel for Appellee.

Maricopa County Public Defender's Office By Christopher V. Johns, Phoenix, Counsel for Appellant.

## OPINION

KESSLER, Presiding Judge.

¶ 1 Jonathan Elijah Large ("Large") appeals his conviction and sentence for one count of armed robbery. We conclude, in light of *Alleyne v. United States,* — U.S. ——, 133 S.Ct. 2151, 2163, 186 L.Ed.2d 314 (2013), that Large was entitled to have a jury determine whether he was on parole when he committed the offense because his release status increased the statutory minimum sentence that could be imposed. However, because it is undisputed that he was on parole when he committed the offense, there was no prejudice in having the court find that fact. Accordingly, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 On July 16, 2012, Large approached the victim with a knife in a shopping plaza parking lot and demanded money. As Large approached, the victim stood up and dropped his cell phone. When the victim refused to give Large money, Large grabbed his cell phone from the ground and fled. The victim and several other men, including two eyewitnesses to the incident, followed Large to an apartment complex where police apprehended him soon thereafter.

¶ 3 A grand jury indicted Large on one count of armed robbery, a class 2 dangerous felony. The State alleged that Large committed the offense while on parole for facilitation of especially aggravated robbery, a

Tennessee felony. At trial, Large testified that he was convicted of a felony in Tennessee in February 2005. A jury convicted Large of armed robbery and found that the offense was dangerous.

¶ 4 After the conviction, the court held a sentencing hearing on the State's allegation of parole status. A Tennessee parole officer testified that in 2005 in Tennessee Large was convicted of facilitation of especially aggravated robbery, a class B felony. The officer explained that Large was on parole for his Tennessee conviction on the date of the armed robbery in this case, and that he remained on parole at the time of the sentencing hearing. The State asked the officer to explain the offense of especially aggravated robbery, but withdrew the question when defense counsel objected to the information's relevance. However, the court admitted a certified copy of the Tennessee judgment into evidence.

¶ 5 The court found that Large was on parole for a felony offense at the time he committed the armed robbery. Defense counsel asked the court to sentence Large to the presumptive sentence of ten and one half years, acknowledging "that's the lowest he can get[ ] because the [c]ourt did find he was on parole at the time of this offense." Consequently, the court sentenced Large to a ten-and-one-half-year, flat-time prison term pursuant to Arizona Revised Statutes ("A.R.S.") section 13–708(A) (Supp.2013),[1] noting that a presumptive flat-time sentence was the minimum Large could receive because of his parole status at the time of the offense.

¶ 6 Large timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12–120.21(A)(1) (2003), 13–4031 (2010), and –4033(A)(1) (2010).

### DISCUSSION

¶ 7 Large challenges his conviction and sentence on several grounds: (1) the State failed to present sufficient evidence that his intent to commit robbery coexisted with his use of force; (2) he was entitled to have a jury find beyond a reasonable doubt that he was on parole for a felony offense at the time that he committed the armed robbery because his release status exposed him to a sentence beyond the statutory maximum; and (3) the trial court erred by enhancing his sentence under A.R.S. § 13–708(A) without finding, on the record, that the Tennessee offense for which he was on parole would have been a felony under Arizona law. We requested supplemental briefing addressing whether the United States Supreme Court's recent decision in *Alleyne* entitled Large to have a jury find his parole status beyond a reasonable doubt. In his supplemental brief, Large argues that *Alleyne* makes *Apprendi*[2] applicable to his release status because such status exposes him to a sentence beyond the statutory minimum, that this principle applies retroactively, and that the trial court committed reversible error by finding his release status instead of submitting the issue to the jury. We address each argument in turn.

### I.   Sufficiency of the Evidence

¶ 8 Large contends that the State failed to present sufficient evidence establishing the coexistence of his intent to commit robbery and his use of force. We review the sufficiency of the evidence *de novo, State v. West,* 226 Ariz. 559, 562, ¶ 15, 250 P.3d 1188, 1191 (2011), construing "the evidence in the light most favorable to sustaining the verdict and resolv[ing] all reasonable inferences against the defendant." *State v. Greene,* 192 Ariz. 431, 436, ¶ 12, 967 P.2d 106, 111 (1998). "Reversible error based on insufficiency of the evidence occurs only where there is a complete absence of probative facts to support the conviction." *State v. Soto–Fong,* 187 Ariz. 186, 200, 928 P.2d 610, 624 (1996) (quoting *State v. Scott,* 113 Ariz. 423, 424–25, 555 P.2d 1117, 1118–19 (1976)).

¶ 9 "A person commits armed robbery if in the course of taking property from the presence of another against his will, such

---

1. We cite to the most recent versions of the applicable statutes when no revisions material to this decision have since occurred.

2. *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

person is armed with a deadly weapon and threatens or uses force with the intent to coerce the surrender of property or to prevent resistance." *State v. Murray,* 184 Ariz. 9, 31, 906 P.2d 542, 564 (1995); *see also* A.R.S. §§ 13–1902(A) (2010), –1904(A)(1) (2010). The intent to commit robbery and the use of force must coexist, otherwise the crime is a theft. *State v. Comer,* 165 Ariz. 413, 420–21, 799 P.2d 333, 340–41 (1990). Large does not dispute that he demanded money from the victim at knifepoint. Nor does he dispute that he took the cell phone against the victim's will. Large concedes that he is guilty of theft.[3] Instead, Large argues that his crime did not rise to the level of an armed robbery because he did not threaten or use force against the victim with the intent to coerce surrender of the cell phone or to prevent the victim from retaining it. Although Large threatened the victim with the intent to coerce surrender of *money,* he argues that his intent did not transfer to taking the cell phone, and that there was no evidence that he accomplished the theft of the cell phone through threat or force. We disagree.

¶ 10 Two eyewitnesses testified that Large approached the victim with a knife and demanded money. One of the eyewitnesses saw the victim stand up and drop his phone, and saw Large pick up the phone and flee. The other corroborated that account and testified that the victim shouted "[that] guy took my phone" immediately afterward. Large argues that the State failed to prove the coexistence of intent and use of force because neither witness testified that the victim dropped his phone or did not attempt to retrieve it *because of* Large's threats or use of force. But Large overlooks the victim's own testimony. The victim explained that he stood up and dropped his phone in response to Large approaching with a knife and demanding money. Further, the victim testified that he would have retrieved his phone after dropping it had Large not been wielding a knife. Thus, the victim's testimony establishes the causal connection Large

claims was lacking in other eyewitness accounts.

¶ 11 Large's reliance on *State v. Lopez,* 158 Ariz. 258, 762 P.2d 545 (1988), and *State v. Wallace,* 151 Ariz. 362, 728 P.2d 232 (1986), is misplaced. In both cases, our supreme court concluded that the defendant did not commit armed robbery because he formulated the intent to take the victim's property only after murdering the victim. *Lopez,* 158 Ariz. at 264, 762 P.2d at 551; *Wallace,* 151 Ariz. at 366, 728 P.2d at 236. Thus, in both *Lopez* and *Wallace* the defendant's use of force did not coexist with his intent to take the victim's property. Here, on the other hand, Large's intent from the start of the encounter was to deprive the victim of his property. That the property he ultimately took was different from the property he initially demanded does not change the fact that during the encounter Large took the victim's property against his will and prevented resistance by wielding a deadly weapon. Accordingly, there was sufficient evidence to support the conviction.

## II. Applicability of *Alleyne* and *Apprendi* to Release Status Enhancement

¶ 12 Next, Large argues that he was entitled to have a jury determine his parole status because that fact exposed him to a penalty beyond the statutory maximum. In *Apprendi v. New Jersey,* the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In *Alleyne,* the United States Supreme Court held that *Apprendi* applies with equal force to facts that increase the statutory mandatory minimum sentence. 133 S.Ct. at 2160. In *State v. Gross,* 201 Ariz. 41, 45, ¶ 19, 31 P.3d 815, 819 (App.2001), we addressed whether a defendant's release status had to be found by a jury beyond a reasonable doubt before receiving an enhanced sentence under A.R.S.

---

**3.** Additionally—and somewhat contradictorily— Large attempts to characterize the cell phone as "lost" property that he merely "found," rather than took against the victim's will through force.

In light of the evidence and Large's concession that he is guilty of theft, we find this argument unconvincing.

§ 13–708(D).[4] Section 13–708(D) requires the trial court to add two years to a defendant's sentence if the defendant committed the offense while "released on bond or on the person's own recognizance on a separate felony offense or while the person is escaped from preconviction custody for a separate felony offense." We concluded that the defendant was entitled to have a jury find his release status beyond a reasonable doubt because A.R.S. § 13–708(D) increased his prescribed penalty range by two years. *Gross,* 201 Ariz. at 45, ¶ 16, 31 P.3d at 819.

### A. A.R.S. § 13–708(A) Increases the Statutory Minimum Penalty

¶ 13 Here, Large was sentenced under A.R.S. § 13–708(A), which enhances the minimum sentence by requiring the court to sentence the defendant to at least a presumptive, flat-time[5] sentence if a defendant commits the offense while "on probation for a conviction of a felony offense or parole, work furlough, community supervision or any other release or has escaped from confinement for conviction of a felony offense." The trial court found that Large was on parole for a Tennessee felony offense at the time that he committed the armed robbery, and therefore sentenced him to the flat-time, presumptive sentence of ten and one half years. Large argues that A.R.S. § 13–708(A)'s requirement of a flat-time sentence increases his sentence beyond the statutory maximum. He contends that when a sentence is not flat, a defendant typically serves only eighty-five percent of his sentence because of earned release credit, which is unavailable to defendants sentenced to serve the full term imposed by the court. *See* A.R.S. § 41–1604.07(A) (2011). As a result, he argues that a defendant sentenced to a flat-time sentence typically will, in fact, spend more time incarcerated than a defendant not so sentenced.

¶ 14 The State initially argued that *Apprendi* is inapplicable to Large's case because A.R.S. § 13–708(A) only increases the statutory minimum sentence. We agree with the State that in *State v. Flores,* we determined that A.R.S. § 13–708(A) only increases the statutory minimum sentence, not the statutory maximum. 201 Ariz. 239, 241, ¶ 8, 33 P.3d 1177, 1179 (App.2001).

### B. *Alleyne* Requires a Jury to Find Facts that Increase the Statutory Minimum Penalty

¶ 15 In his supplemental brief, however, Large argues that *Alleyne* extends *Apprendi* to facts that increase the statutory minimum sentence and that this principle applies retroactively. The State first suggests that release status might be exempt from this requirement in the same manner as prior convictions are exempt. Alternatively, the State concedes that *Alleyne* applies retroactively and extends *Apprendi* to facts that increase the statutory minimum sentence, but argues that any error was not reversible. We conclude, in light of *Alleyne,* that Large was entitled to have a jury determine his parole status, but we agree that the error does not require reversal in this case.

¶ 16 *Alleyne* held that *Apprendi* applies with equal force to facts that increase the statutory mandatory minimum sentence. 133 S.Ct. at 2160. The State cites cases from other jurisdictions that have concluded release status is exempt from *Apprendi* in the same manner as prior convictions. *See People v. Towne,* 44 Cal.4th 63, 78 Cal.Rptr.3d 530, 186 P.3d 10, 18 (2008); *People v. Montoya,* 141 P.3d 916, 923 (Colo.App.2006). However, in *Gross* we declined to extend the exception for prior convictions to include release status, and therefore concluded that *Apprendi* applies to a defendant's release status when it exposes the defendant to a sentence beyond the statutory maximum. 201 Ariz. at 45, ¶¶ 17–19, 31 P.3d at 819; *see also State v. Benenati,* 203 Ariz. 235, 240–41, ¶¶ 16–20, 52 P.3d 804, 809–810 (App.2002). Thus, together *Alleyne* and *Gross* require that *Apprendi* apply to a defendant's release status when that fact exposes him to a higher

---

4. At the time, the section was numbered A.R.S. § 13–604(R) (2001). For clarity, we will refer to this section by its current number throughout this opinion.

5. With a flat-time sentence, the full term must be served day-for-day, without eligibility for early release except for credit for pretrial time spent in custody.

mandatory minimum sentence. Although *Alleyne* had not been decided at the time Large was convicted and sentenced, its rationale applies to cases pending on direct review because *Alleyne* presented a new rule of constitutional law. *Gross*, 201 Ariz. at 43, ¶ 4, 31 P.3d at 817.

### C. The Error Here is Harmless

¶ 17 Citing *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005), the State argues that we should review only for fundamental error because Large failed to object or to present the issue below. Fundamental error is "error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial." *State v. Hunter*, 142 Ariz. 88, 90, 688 P.2d 980, 982 (1984). "To prevail under … [fundamental error review], a defendant must establish both that fundamental error exists and that the error in his case caused him prejudice." *Henderson*, 210 Ariz. at 567, ¶ 20, 115 P.3d at 607.

¶ 18 Although Large did not object or present this issue below, we recognize an inherent unfairness in penalizing him on appeal when the legal authority supporting his position developed only after his conviction and sentence. Indeed, at the time that Large was convicted and sentenced, our decision in *Flores*, which concluded that A.R.S. § 13–708(A) did not implicate *Apprendi* because it only increased the statutory minimum penalty, was still good law. *See* 201 Ariz. at 241, ¶ 8, 33 P.3d at 1179. It was months after Large was convicted that *Alleyne* extended *Apprendi* to facts that increase the statutory minimum penalty, thereby effectively negating our contrary conclusion in *Flores*. We are not persuaded, then, that fundamental error review is appropriate under these circumstances. Nevertheless, we affirm Large's sentence because the error was not prejudicial even under harmless error review.

¶ 19 Under a harmless error analysis, the State has the burden "to prove beyond a reasonable doubt that the error did not contribute to or affect the verdict or sentence." *Henderson*, 210 Ariz. at 567, ¶ 18, 115 P.3d at 607. Here, the facts show that no reasonable jury could conclude that Large was not on parole for a felony at the time that he committed the armed robbery. Large testified at trial that he had been convicted of a felony in Tennessee. During the sentencing hearing, Large's Tennessee parole officer testified that Large was on parole for facilitation of "especially aggravated robbery," a Tennessee felony, at the time that he committed the offense in this case. The court admitted a certified copy of the Tennessee judgment. Large offered no evidence to contradict the officer's testimony, nor did he otherwise contest the court's finding that he was on parole. Based on the uncontroverted evidence, no reasonable jury could have concluded that Large was not on parole at the time that he committed the armed robbery. Thus, under harmless error review, the trial court's failure to submit Large's release status to the jury did not contribute to or affect the sentence and, accordingly, does not require reversal or remand.

### III. Analogous Felonies for Foreign Convictions

¶ 20 Finally, Large argues that the court erred in sentencing him under A.R.S. § 13–708(A) without first finding, on the record, that the Tennessee offense for which he was on parole has an analog under Arizona law. Large acknowledges that his argument is entitled only to fundamental error review because he did not object below. *See Henderson*, 210 Ariz. at 567, ¶ 19, 115 P.3d at 607. The State contends that the court was not required to make this determination. Alternatively, the State argues, first, that Large invited the error by objecting to the relevance of testimony concerning the elements of the Tennessee offense and, second, that Large fails to carry his burden under fundamental error review because he does not prove that the error was prejudicial. We conclude that before enhancing a defendant's sentence based on his parole status from a foreign conviction, a court must determine that the foreign offense for which a defen-

dant is on parole has an analog under Arizona law. However, we find no error here because the Tennessee offense for which Large was on parole has an analog under Arizona law, the court had the information necessary to make this determination, and we presume the court knew and followed the law.[6]

### A. To Enhance a Defendant's Sentence Based on Parole Status from a Foreign Conviction, the Court Must Determine that the Foreign Offense for which the Defendant is on Parole has an Arizona Analog

¶ 21 Section 13–708(A) imposes a mandatory minimum of the presumptive, flat-time sentence if a defendant commits a dangerous offense "while ... on probation ... or parole ... for conviction of *a felony offense.*" (Emphasis added). " 'Felony' means an offense for which a sentence to a term of imprisonment in the custody of the state department of corrections is authorized *by any law of this state.*" A.R.S. § 13–105(18) (Supp.2013) (emphasis added). " 'Offense' ... means conduct for which a sentence to a term of imprisonment or of a fine is provided by any law of the state in which it occurred ... and, *if the act occurred in a state other than this state, it would be so punishable under the laws ... of this state ... if the act had occurred in this state.*" A.R.S. § 13–105(27) (emphasis added). Based on the plain language of the statute, to impose a flat-time, presumptive sentence based upon a defendant's parole status from an out-of-state conviction, the foreign offense for which the defendant is on parole must have been punishable as a felony in Arizona. The question, then, is by what method must the court make this determination.

¶ 22 We agree with Large that our supreme court's decision in *State v. Crawford,* 214 Ariz. 129, 149 P.3d 753 (2007), controls. *Crawford* interpreted A.R.S. § 13–703 (Supp.2013),[7] which subjects a criminal

defendant who has prior historical felony convictions to enhanced sentences. 214 Ariz. at 130, ¶ 1, 149 P.3d at 754. When *Crawford* was decided, a foreign felony conviction triggered A.R.S. § 13–703 only if the offense would have been punishable as a felony in Arizona. *See id.* Our supreme court concluded that "[b]efore using a foreign conviction for sentencing enhancement purposes under § [13–703], the superior court must first conclude that the foreign conviction includes 'every element that would be required to prove an enumerated Arizona offense.' " *Crawford,* 214 Ariz. at 131, ¶ 7, 149 P.3d at 755 (quoting *State v. Ault,* 157 Ariz. 516, 521, 759 P.2d 1320, 1325 (1988)). "The court makes this determination by comparing the statutory elements of the foreign crime with those in the relevant Arizona statute. '[T]here must be strict conformity between the elements of the [foreign] felony and the elements of some Arizona felony....' " *Id.* (quoting *State v. Clough,* 171 Ariz. 217, 219, 829 P.2d 1263, 1265–66 (App.1992)).[8]

¶ 23 We disagree with the State that the *Crawford* analysis does not apply here because of legislative amendments to A.R.S. § 13–703. In 2012, our legislature amended A.R.S. § 13–703 to allow enhanced sentences based on a historical prior conviction, regardless of where the offense was committed, so long as the offense was a felony under the laws of the jurisdiction in which the defendant was convicted. 2012 Ariz. Sess. Laws, ch. 190, §§ 1–2 (2d Reg.Sess.) ("the 2012 amendments"). Thus, in *State v. Moran,* we recognized that A.R.S. § 13–703, as amended, "supersed[ed] *Crawford* and greatly simplif[ied] the use of out-of-state historical prior felony convictions." 232 Ariz. 528, 535, ¶ 21, 307 P.3d 95, 102 (App.2013).

¶ 24 Although *Moran* acknowledged that the 2012 amendments superseded the *Crawford* analysis for purposes of A.R.S. § 13–703, we also recognized that *Crawford* remained applicable in other contexts not af-

---

**6.** Because we conclude that no error occurred, we do not need to decide whether the alleged error was invited.

**7.** At the time, the section was numbered A.R.S. § 13–604 (Supp.2004). For clarity, we will refer

to this section by its current number throughout this opinion.

**8.** We will refer to this method as "the *Crawford* analysis."

fected by the amendments. *Id.* In applying the *Crawford* analysis to our aggravated DUI statute, we explained that "[t]he terms of our aggravated DUI statute ... continue to specify that this substantive offense requires any prior DUI conviction to establish a violation of Arizona law, had the out-of-state act been committed here." *Id.; see also* A.R.S. § 28–1383(A)(2) (Supp.2013). We noted that "[i]f the legislature wishes to allow generic DUI offenses committed in other states to establish aggravated DUI, or if it wishes to specify a different test for determining which foreign convictions expose a person to aggravated DUI charges in Arizona, the legislature remains free to do so." *Id.*

¶ 25 Our legislature did not amend A.R.S. § 13–708(A) or the definitions of "felony" or "offense" in A.R.S. § 13–105 in the same way that it amended A.R.S. § 13–703 and the definition of "historical prior felony conviction." Furthermore, the 2012 amendments to A.R.S. § 13–703 are plainly limited to that section. *See* A.R.S. § 13–703(M) (*"For purposes of subsection B, paragraph 2 and subsection C of this section,* a person who has been convicted in any court outside the jurisdiction of this state of an offense that was punishable by that jurisdiction as a felony is subject to this section.") (emphasis added). On the other hand, by the plain language of the statute and the relevant definitions, A.R.S. § 13–708(A) still applies only to defendants who are on parole status for prior convictions that are considered felonies under Arizona law. *See* A.R.S. §§ 13–708(A), –105(18), (22), (27). This interpretation comports with *State v. Weible*, in which our supreme court held that the test for applying what is now A.R.S. § 13–708(A) "is whether the prior felony conviction, resulting in the parole status, would have been authorized by the laws of Arizona." 142 Ariz. 113, 118, 688 P.2d 1005, 1010 (1984).

¶ 26 Alternatively, the State argues that no case expressly requires a trial court to engage in the *Crawford* analysis when applying A.R.S. § 13–708(A). Here, we find *State v. Clough*, 171 Ariz. 217, 829 P.2d 1263 (App. 1992)—which was cited favorably in *Crawford*, 214 Ariz. at 131, ¶ 7, 149 P.3d at 755—

instructive. In *Clough*, the defendant argued that his sentence was improperly enhanced based both on a prior Montana felony conviction and his probation status for that conviction because the foreign offense had no analog under Arizona law. 171 Ariz. at 219, 829 P.2d at 1265. We concluded, first, that the defendant's sentence could not be enhanced based on the prior Montana felony conviction because the Montana offense—issuing a bad check—did not correspond to any Arizona felony. *Id.* at 221, 224–25, 829 P.2d at 1267, 1270–71. In making this determination, we engaged in what later became the *Crawford* analysis and compared the elements of the Montana offense with our criminal statutes. *Id.* at 220–25, 829 P.2d at 1267–71. Next, we considered whether the defendant's sentence was properly enhanced based on his probation status from that Montana offense. *Id.* at 225, 829 P.2d at 1271. We concluded that *"as we have explained above,* [because] we cannot be certain that one who was guilty of passing a bad check in Montana would necessarily have committed any felony in Arizona, it was error to sentence the defendant" based on his probation status from the Montana conviction. *Id.* (emphasis added). Thus, we applied a *Crawford*-type analysis equally to prior conviction enhancements and release status enhancements. The 2012 amendments superseded this analysis for prior convictions, but left unaffected the statutes relating to release status. Therefore, the analysis applied to release status enhancement in *Clough* remains applicable.

¶ 27 Thus, before enhancing a defendant's sentence under A.R.S. § 13–708(A) based on his parole status for an out-of-state conviction at the time of the new offense, the trial court must determine that the underlying foreign offense for which the defendant is on parole has an analog under Arizona law. The court makes this determination by comparing the elements of the foreign offense with those in the relevant Arizona statute. There must be strict conformity between the elements of the foreign offense and an Arizona felony.

## B. The Trial Court Did Not Err

¶ 28 Here, the trial court admitted a certified copy of the Tennessee judgment showing

that Large was convicted of facilitation of especially aggravated robbery and listing the relevant Tennessee statutes. This document contained the information necessary to make the purely legal determination that facilitation of especially aggravated robbery has an analog under Arizona law. Large's claim of error appears to hinge on the fact that the court did not explain its determination at the sentencing hearing. Although we agree that, as a matter of good practice, a trial court should explain its enhancement of a sentence under A.R.S. § 13–708(A) by finding the analog to Arizona law and including that explanation in the record, we note that Large cites no authority that a trial court is required to do so. Moreover, Large did not object when the court sentenced him based on his parole status for the Tennessee conviction, nor did he request an on-the-record explanation. Thus, error exists only if there is, in fact, no Arizona analog for the Tennessee offense.

■ ¶ 29 We find no error. The Tennessee offense of facilitation of especially aggravated robbery is analogous to facilitation of armed robbery in Arizona. "Especially aggravated robbery" is "the intentional or knowing theft of property from the person of another by violence or putting the person in fear" that is "[a]ccomplished with a deadly weapon," and "where the victim suffers serious bodily injury." Tenn.Code Ann. ("T.C.A.") §§ 39–13–401, –403(a). In Arizona, armed robbery means "taking any property of another from his person or immediate presence and against his will" through threats or force intended "either to coerce surrender of property or to prevent resistance," and that is accomplished while "armed with a deadly weapon or a simulated deadly weapon" or through the use or threatened use of "a deadly weapon or dangerous instrument or simulated deadly weapon." A.R.S. §§ 13–1902(A), –1904(A). Whereas threats of force are sufficient for the Arizona offense, the Tennessee offense requires serious bodily injury to the victim. Thus, acts that constitute especially aggravated robbery in Tennessee necessarily would constitute an armed robbery in Arizona.

¶ 30 A person commits "facilitation of a felony" in Tennessee "if, knowing that anoth-

er intends to commit a specific felony ... the person knowingly furnishes substantial assistance in the commission of the felony." T.C.A. § 39–11–403. In Arizona, "a person commits facilitation if, acting with knowledge that another person is committing or intends to commit an offense, the person knowingly provides the other person with means or opportunity for the commission of the offense." A.R.S. § 13–1004(A) (2004). We discern no meaningful difference between furnishing substantial assistance and providing means or opportunity, nor does Large argue that the two are not analogous. To the extent that there are semantic differences between the two statutes, the Arizona offense covers a broader range of activity than the Tennessee offense because facilitation in Arizona does not require that the means or opportunity provided be substantial and the mental state required for the Arizona offense (knowingly) includes intentional acts required for the Tennessee offense. A.R.S. § 13–202(C). Thus, actions constituting facilitation in Tennessee would constitute facilitation if committed in Arizona.

■ ¶ 31 Facilitation of especially aggravated robbery in Tennessee is analogous to facilitation of armed robbery in Arizona. The trial court had the information necessary to make this legal determination. That the court did not discuss its determination on the record is of no consequence because Large never requested that its determination be part of the record, and we presume that courts know and follow the law after considering all sentencing information before them. *See State v. Medrano,* 185 Ariz. 192, 196, 914 P.2d 225, 229 (1996). Accordingly, the court did not err.

## CONCLUSION

¶ 32 For the foregoing reasons, we affirm Large's conviction and sentence.