NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

RENEE ELLE VILIBORGHI, *Appellant.*

No. 1 CA-CR 16-0550
FILED 7-27-2017

Appeal from the Superior Court in Mohave County
No. S8015CR201400929
The Honorable Steven F. Conn, Judge (Retired)

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By W. Scott Simon
*Counsel for Appellee*

Lane, Hupp, & Crowley, PLC, Phoenix
By Jonathan Hupp
*Counsel for Appellant*

<hr>

**MEMORANDUM DECISION**

Presiding Judge Lawrence F. Winthrop delivered the decision of the Court, in which Judge Jennifer B. Campbell and Judge Randall M. Howe joined.

<hr>

**W I N T H R O P**, Presiding Judge:

¶1        Renee Elle Viliborghi ("Appellant") appeals her sentences and convictions for one count of fraudulent schemes and artifices and one count of theft.  For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**[1]

¶2        In 2010, the victim learned from a private investigator that his father had died and left him an inheritance.  The private investigator told the victim to contact a law firm in Las Vegas, Nevada.  The victim called the law firm and was told that, before he could receive his inheritance money, he needed to hire "a financial adviser."  An individual with whom the victim worked mentioned that his mother, Derindar Tillery, "knew about somebody" who could provide such services.  Tillery put the victim in touch with Appellant, who represented that she was a financial adviser. Based on this representation, the victim agreed to hire Appellant. Appellant faxed an "engagement letter" to the Las Vegas law firm indicating that the victim had hired her company, Logical Enterprises, to provide financial planning and investment consulting services.  The letter, which the victim and Appellant signed, stated that "[t]he fee arrangement, as agreed will be based on a rate of thirty-four (34) dollars an hour."  Tillery then took the victim to Las Vegas, where the law firm released a check to him in the amount of $974,599.86.

¶3        The next day, Tillery took the victim to meet Appellant at Appellant's home in Tempe, Arizona.  Later, Tillery took the victim and Appellant to Chase Bank in Tempe, where the victim's inheritance check was deposited into a Logical Enterprises bank account.  At the time, the victim thought the money was being deposited into a new account he was

<hr>

[1]        We view the evidence in the light most favorable to upholding the jury's verdict.  *State v. Moody*, 208 Ariz. 424, 435 n.1, 94 P.3d 1119, 1130 n.1 (2004).

opening that day, and did not know the money was placed instead into the Logical Enterprises account.

¶4          After going to the bank, the victim and Appellant returned to Appellant's residence.  The victim had informed Appellant that he was interested in investing in real estate, and he waited for Appellant "to get done with her paperwork for [him] to sign so [he] could leave."  When the victim left Appellant's house, he thought Appellant was going to help him invest his money and charge him $34 per hour for her services.

¶5          Over the next month, Appellant travelled to Bullhead City twice to meet with the victim and help him with real estate investments. Several months later, the victim told Appellant he was no longer interested in her services.  The victim then learned that Appellant was in possession of an "irrevocable assignment," a document purportedly signed by the victim that gave Logical Enterprises half of his inheritance.  The victim, maintaining that he never signed any document assigning half of his inheritance to Appellant or Logical Enterprises, sued Appellant and obtained a civil judgment against her in 2014.[2]

¶6          At some point thereafter, the Mohave County Attorney's Office became aware of the victim's civil case and judgment.  After investigating, the State secured an indictment against Appellant for one count of fraudulent schemes and artifices, a class two felony, and one count of theft, a class two felony.[3]

¶7          At a final case management conference on June 20, 2016, the parties indicated they were ready to proceed with trial and the court set the matter for a jury trial.  On June 23, defense counsel moved to continue the

---

[2]      Appellant testified that the civil lawsuit did not go to trial because she did not have the funds to hire an attorney, so she "had to let it go to default."

[3]      Appellant was originally indicted in 2014 for one count of fraudulent schemes and artifices, a class two felony; one count of theft, a class two felony; and one count of theft from a vulnerable adult, a class two felony. However, in 2016, the State secured a new indictment, charging Appellant with one count of fraudulent schemes and artifices and one count of theft. At the State's request, the trial court consolidated the two cases under the first case number, and the State dismissed the three counts in the first indictment.

trial, stating that he had received the grand jury transcript of the second indictment on June 22, and, based on the investigator's testimony that the victim "did not sign a[n] irrevocable assignment," he needed "additional time to consult with an expert document examiner." After hearing oral argument on the motion, the trial court denied the defense's motion to continue.

¶8            At trial, the State presented testimony from the victim, Tillery, and an investigator from the Mohave County Attorney's Office. After the State rested, the defense moved for a judgment of acquittal pursuant to Arizona Rule of Criminal Procedure 20, arguing that venue was improper because the State did not prove "the events occurred [] in Mohave County." According to the defense, "the theft allegation and the [] transactions that [the investigator] referred to, and probably most significantly the check that was deposited, those were all events that occurred in Maricopa County." The court denied the motion, concluding the phone conversations between Appellant and the victim while the victim was in Mohave County and Appellant's trips to Mohave County to "pay[] out money towards real estate" constituted sufficient evidence "to establish territorial jurisdiction on the part of the State of Arizona, and that venue in this case in Mohave County is appropriate."

¶9            The defense presented testimony from Appellant, who stated that she and the victim "entered into a verbal agreement" that the victim would "hire the company to do the consulting and help him for five years worth of business of both real estate and a couple other ideas he had." She stated the victim indicated he wanted "to split this check with the company now," so that Appellant would be "paid in full" and the victim would not have to worry about ever paying Appellant again. Appellant further claimed that the victim later signed the irrevocable assignment when they returned to her home after going to the bank.

¶10           The jury found Appellant guilty on both counts and, as it pertained to count two, that "the value of the property was $100,000 or more."

¶11           At sentencing, the court found Appellant's lack of criminal history as a mitigating circumstance and did not find any aggravating circumstances. The court sentenced Appellant to a slightly mitigated sentence of 4.5 years in prison for each count, with both counts to run concurrently.

¶12 Appellant timely appealed, and we have jurisdiction pursuant to the Arizona Constitution, Article 6, Section 9, and Arizona Revised Statutes ("A.R.S.") §§ 12-120.21(A)(1) (2016), 13-4031 (2010), and 13-4033(A) (2010).

**ANALYSIS**

*I.    Denial of Motion to Continue*

¶13 Appellant argues the trial court erred in denying her motion to continue the trial. She alleges this error implicated her Sixth Amendment right to the effective assistance of counsel because, without the continuance, her counsel was unable to put on an "essential defense." Generally, we review a trial court's denial of a motion to continue for an abuse of discretion. *State v. Forde*, 233 Ariz. 543, 555, ¶ 18, 315 P.3d 1200, 1212 (2014) (citation omitted). However, we review *de novo* claims implicating a defendant's Sixth Amendment right to counsel. *See State v. Rasul*, 216 Ariz. 491, 493, ¶ 4, 167 P.3d 1286, 1288 (App. 2007).

¶14 Appellant contends her "trial counsel was rendered ineffective" by the trial court's denial of her request for a continuance because her trial counsel had only recently learned that "the State was espousing a new theory of the case." Specifically, she argues the State previously alleged that although the victim had signed the irrevocable assignment, Appellant took advantage of the victim, who was a "vulnerable adult." According to Appellant, the State's "new" theory was that the victim never signed the irrevocable assignment, and that his signature was a "cut and paste job." Appellant maintains that, without a continuance, her trial counsel was unable "to put on an essential defense" by hiring "an expert document examiner or an expert in handwriting analysis" who could testify about the similarity of the signatures on the documents.

¶15 Appellant relies on *State v. Aragon*, 221 Ariz. 88, 210 P.3d 1259 (App. 2009) to support her argument that the trial court violated her Sixth Amendment right to counsel by denying her motion to continue. In *Aragon*, this court concluded the trial court erred in denying a continuance where the defendant sought to substitute counsel six days before trial. *Id.* at 91, ¶¶ 7-9, 210 P.3d at 1262. The court reasoned that, among other things, the defendant "had neither sought nor been granted any prior continuances," the State did not dispute that witnesses could likely accommodate their calendars in the event of rescheduling, and the case pertained to a DUI offense that did not involve "a victim anxious for a resolution." *Id.* at 90-91, ¶ 6, 210 P.3d at 1261-62. Therefore, the trial court's "unreasoning and

arbitrary adherence to its schedule without due regard for [the defendant's] legitimate request to exercise his right to the counsel of his choice" constituted structural error. *Id.* at 91, ¶ 9, 210 P.3d at 1262.

¶16 Here, in contrast, Appellant's motion to continue was not based on a request to substitute new trial counsel. Instead, she requested a continuance of "at least 60 days" to prepare to address the State's "new theory" of the case. But after our review of the record, we cannot conclude the State's theory of the case had changed. At the 2014 grand jury proceedings, Investigator Auld stated that Appellant "had [the victim] sign the irrevocable assignment" but that the victim "never saw the first page" of the document. After the 2016 grand jury proceedings,[4] the State maintained that the victim signed "numerous documents presented by [Appellant]," but he "unequivocally says he was never presented with the complete two-page document, intact, prepared by [Appellant]." At oral argument on the motion to continue, the State acknowledged that it did not know exactly how or when the document "came to be created" because the victim left Appellant's residence on the day of the bank deposit "with nothing, no copies, no anything." The State therefore consistently maintained that the victim was never presented with and never signed the complete, two-page irrevocable assignment.[5] Moreover, even assuming the State's theory of the case had changed, the State was not required to notify the defense of the theory under which it would proceed at trial. *See State v. Arnett*, 158 Ariz. 15, 18, 760 P.2d 1064, 1067 (1988) ("There is no requirement that the defendant receive notice of how the State will prove his responsibility for the alleged offense.").

¶17 Additionally, unlike in *Aragon*, Appellant's case had been pending for two years and Appellant had already been granted multiple

---

[4] The record on appeal does not contain a transcript of the 2016 grand jury proceedings.

[5] Although the victim later testified at trial that the signature on the irrevocable assignment was not his, suggesting that it had been forged, the State presented multiple possible explanations about the origin of the signatures on the documents the victim purportedly signed.

continuances.[6]   And in this case, a victim was awaiting resolution,[7] and defense counsel represented to the trial court on June 20 that she was prepared to proceed with trial on July 6.[8]   Further, without an offer of proof from the defense, how testimony from an expert document examiner or handwriting specialist would be helpful to determining whether the victim saw and signed the full, two-page irrevocable assignment is not clear.

¶18        Accordingly, the trial court did not abuse its discretion or otherwise err in denying Appellant's motion to continue.

        II.        Venue

¶19        Appellant argues the trial court erred in denying her Rule 20 motion because venue in Mohave County was improper.  We review *de novo* the trial court's denial of a motion pursuant to Rule 20.  *State v. Parker*, 231 Ariz. 391, 407, ¶ 69, 296 P.3d 54, 70 (2013).

¶20        Venue is governed by A.R.S. § 13-109(A) (Supp. 2016), which provides that "[c]riminal prosecutions shall be tried in the county in which conduct constituting any element of the offense or a result of such conduct occurred, unless otherwise provided by law."  A.R.S. § 13-109(B)(1) further provides that "[i]f conduct constituting an element of an offense or a result constituting an element of an offense occurs in two or more counties, trial of the offense may be held in any of the counties concerned[.]"  However,

---

[6]        Between April 2015 and April 2016, Appellant moved to continue the final management conference and jury trial on at least ten separate occasions, and the trial court granted each motion.  After the State secured a new indictment and moved to consolidate the cases, the trial court granted Appellant's request to continue a hearing on the motion to consolidate.

[7]        Article 2, Section 2.1(A)(10) of the Arizona Constitution provides that a victim of a crime has a right "[t]o a speedy trial or disposition and prompt and final conclusion of the case after the conviction and sentence." *See also* A.R.S. § 13-4435(A) (2010) ("In any criminal proceeding, the court, prosecutor and law enforcement officials shall take appropriate action to ensure a speedy trial for the victim.").

[8]        At the hearing on the motion to consolidate, defense counsel stated, "we certainly don't have any issue with the case being set in two weeks."

"venue may be waived or changed," *State v. Willoughby*, 181 Ariz. 530, 537 n.7, 892 P.2d 1319, 1326 n.7 (1995), and "[t]he failure to object to venue before trial waives the issue on appeal." *State v. Girdler*, 138 Ariz. 482, 490, 675 P.2d 1301, 1309 (1983). Accordingly, by failing to challenge venue before trial, Appellant has waived this argument on appeal.[9]

### III. *Determination of the Value of the Benefit Obtained on Count One*

**¶21** The verdict forms submitted to the jury concerning count one did not direct the jurors to make a finding concerning the value of the property or benefit taken in the event they found Appellant guilty. Appellant argues the trial court erred in "failing to let the jury determine the value of the benefit received on count one, thus exposing [her] to a mandatory prison sentence." Because Appellant did not object to either the verdict form or the trial court's imposition of sentence, we review for fundamental error only. *State v. Henderson*, 210 Ariz. 561, 567, ¶ 19, 115 P.3d 601, 607 (2005).

**¶22** In *Apprendi v. New Jersey*, the United States Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. 466, 490 (2000). *Alleyne v. U.S.* extended that holding to facts that increase the statutory mandatory minimum sentence. 133 S. Ct. 2151, 2160 (2013).

**¶23** A.R.S. § 13-2310(C) provides that a person who is convicted of fraudulent schemes and artifices "that involved a benefit with a value of one hundred thousand dollars or more" is not eligible for suspension of sentence or probation. Appellant argues that because this provision "increases the minimum penalty" for the crime, the trial court erred in not allowing the jury to determine the value of the benefit received on this count. We agree with Appellant that a finding that the fraud count

---

[9] Even assuming Appellant did not waive her venue argument by failing to raise it before trial, sufficient circumstantial evidence existed for the trial court to find that venue in Mohave County was established by a preponderance of the evidence. *See State v. Mohr*, 150 Ariz. 564, 566, 724 P.2d 1233, 1235 (App. 1986) (stating that "proof of venue need only be by a preponderance of the evidence"). Although the victim's inheritance check was deposited into Appellant's business account at a bank in Tempe, located in Maricopa County, Appellant later travelled to Mohave County on more than one occasion to meet with the victim about real estate investments.

involved a benefit with a value of $100,000 or more increased the minimum penalty for the crime by making Appellant ineligible for probation. That finding was therefore "required to have been submitted to the jury, inherent in the jury's verdicts, or otherwise excepted from *Alleyne* and *Apprendi*." *State v. Flores*, 236 Ariz. 33, 35, ¶ 5, 335 P.3d 555, 557 (App. 2014). On this record, we conclude that finding was inherent in the jury's verdicts. The verdict form finding Appellant guilty of theft contained a separate finding that "the value of the property was $100,000 or more." Although the jury was not directed to make the same separate finding pertaining to the fraud count, both counts involved the same alleged conduct on the part of Appellant, and resulted in the same alleged financial losses. Therefore, by making a separate finding on the theft count that the value of the property was $100,000 or more, the jury implicitly found that same fact for the fraud count. *Cf. State v. Martinez*, 210 Ariz. 578, 585, ¶ 27, 115 P.3d 618, 625 (2005) (concluding that when the jury convicted the defendant of first degree murder, it implicitly found the aggravating factor of "severe injuries and death of the victim"); *State v. Cropper*, 206 Ariz. 153, 156 n.2, ¶ 10, 76 P.3d 424, 427 n.2 (2003) (holding that when a jury simultaneously convicts a defendant of first degree murder and deadly or dangerous assault by a prisoner, it implicitly finds the aggravating factor of murder while in the custody of ADOC); *State v. Ring*, 204 Ariz. 534, 561, ¶ 83, 65 P.3d 915, 942 (2003) (explaining that when a jury convicts a defendant of first degree murder and another crime against the victim in which the age of the victim constitutes a substantive element of the crime, the age-relevant aggravator is implicit in the jury's verdict).

¶24         Appellant cites *State v. Ortiz*, 238 Ariz. 329, 360 P.3d 125 (App. 2015) and *State v. Large*, 234 Ariz. 274, 321 P.3d 439 (App. 2014) to support her argument that the trial court erred in not requiring the jury to explicitly determine the amount of the benefit obtained in relation to the fraud count. In *Ortiz*, the State alleged, for sentence-enhancement purposes, that the defendant had committed the offenses on different occasions but the charges had been consolidated for trial. 238 Ariz. at 342, ¶ 61, 360 P.3d at 138. This court concluded that the jury, rather than the trial court, should have decided whether the defendant had committed the offenses on different occasions. *Id.* at 344, ¶ 70, 360 P.3d at 140. In that case, however, the State conceded that the factors used to determine whether the offenses were committed on the same occasion were not inherent in the jury's verdicts. *Id.* In *Large*, this court held that a defendant was entitled to have a jury determine his parole status where that status increased the statutory minimum sentence. 234 Ariz. at 279, ¶ 15, 321 P.3d at 444. But there, the defendant's status as a parolee was not implicit in the jury's verdict finding him guilty of armed robbery, nor was the defendant simultaneously

convicted of another offense that made his release status inherent in the jury's verdict. Thus, we conclude that the holdings in *Ortiz* and *Large* are inapposite to the facts here.

**¶25** Accordingly, because the jury explicitly found that the value of the benefit obtained by Appellant on the theft count was more than $100,000, the jury also implicitly found that the value of the benefit obtained by Appellant on the fraud count was more than $100,000.[10] We find no error, let alone fundamental error.

    *IV.    Sentence*

**¶26** Appellant argues the trial court erred in considering an aggravating factor not found by the jury to offset mitigating factors in determining her sentence. We review *de novo* whether a trial court may employ a given factor to aggravate a sentence. *State v. Alvarez*, 205 Ariz. 110, 113, ¶ 6, 67 P.3d 706, 709 (App. 2003). However, because Appellant failed to object below, we review for fundamental error only. *See Henderson*, 210 Ariz. at 567, ¶ 19, 115 P.3d at 607; *but see State v. Vermuele*, 226 Ariz. 399, 402, ¶ 9, 249 P.3d 1099, 1102 (App. 2011) (concluding a defendant did not forfeit his right to ordinary appellate review by failing to object during or following the imposition of sentence).[11]

**¶27** Appellant contends the trial court's imposition of sentence violates *Blakely v. Washington*, 542 U.S. 296 (2004), which held that a defendant's Sixth Amendment right to a jury trial can be violated if the court imposes a sentence greater than what the jury's verdict alone allows. *Id.* at 305. In *Blakely*, the trial court sentenced the defendant to more than three years above the statutory maximum after finding the defendant had acted with "deliberate cruelty," a statutory aggravator neither admitted by the defendant nor found by the jury. *Id.* at 303. Here, in contrast, the trial

---

[10] Further, even assuming the court's omission of a specific finding for count one was error, Appellant has not demonstrated how such error was prejudicial. The only potential prejudice Appellant suggests is entirely dependent on this or some other court potentially vacating Appellant's conviction on count two, an argument that is entirely speculative, and not supported by either the record or the applicable law.

[11] Because we find no error, fundamental or otherwise, we need not decide whether Appellant forfeited her rights by not objecting below.

court sentenced Appellant to a mitigated term of 4.5 years without finding any statutory aggravators.[12]   Although the trial court weighed the mitigating factor of Appellant's lack of criminal history against "the significant loss" and the "significant impact on the victim," the court had discretion to do so. *See State v. Cazares*, 205 Ariz. 425, 427, ¶ 8, 72 P.3d 355, 357 (App. 2003) ("The weight to be given any factor asserted in mitigation rests within the trial court's sound discretion."). Further, even assuming the trial court's mention of "the significant loss" could be construed as a consideration of an aggravating factor, such consideration was not a violation of *Blakely* because Appellant received a sentence that was "less than the sentence the judge could have imposed based solely on the facts found by the jury and admitted by [Appellant]." *State v. Miranda-Cabrera*, 209 Ariz. 220, 228, ¶ 35, 99 P.3d 35, 43 (App. 2004). Accordingly, the trial court did not err in its imposition of sentence.

## CONCLUSION

¶28        Appellant's convictions and sentences are affirmed.



AMY M. WOOD • Clerk of the Court
FILED:  AA

---

[12]     In noting "there is no aggravation that I can find in this case," the court found that the possible range of sentence was "a range of three to five years," with five years being the presumptive term.