IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO



THE STATE OF ARIZONA,      )
                           )        2 CA-CR 2006-0203
              Appellee,    )        DEPARTMENT B
                           )
        v.                 )        O P I N I O N
                           )
MICHAEL MANUEL DIXON,      )
                           )
              Appellant.   )
_____)

APPEAL FROM THE SUPERIOR COURT OF COCHISE COUNTY

Cause No. CR200500434

Honorable James L. Conlogue, Judge Pro Tempore

AFFIRMED

_____

Terry Goddard, Arizona Attorney General
  By Randall M. Howe and David A. Sullivan                              Tucson
                                                        Attorneys for Appellee


Joy Bertrand                                                          Phoenix
                                                        Attorney for Appellant

_____

E S P I N O S A, Judge.

¶1        After a jury trial, Michael Dixon was convicted of theft of a means of

transportation, a class three felony, and possession of drug paraphernalia, a class six felony.

The trial court sentenced him to concurrent, presumptive prison terms of 3.5 years and one

year. On appeal, Dixon challenges only his conviction for theft of a means of transportation and the trial court's order that he pay restitution to the victims. We affirm.

**Background**

¶2      Jessie M. testified that on May 28, 2005, he had parked his truck at a golf course where he worked in Tucson, locked it, and turned on the security alarm. When he returned to the parking lot later that day, the truck was missing, and he reported it stolen. On June 9, Sierra Vista police found the vehicle parked on a residential street with Dixon inside. The previously red truck had been partially spray-painted blue, the tires and seats had been replaced, and the dashboard had been "torn apart."

¶3      At trial, Dixon testified he had found the damaged truck in the desert near Tombstone and believed it had been abandoned, possibly by "illegal aliens" or as part of an "insurance scam." He admitted he had replaced the tires, spray-painted "three quarters" of the truck blue, used a "hot wire" to start the engine, drove the truck for a period of days, and had not contacted the "DMV" (Arizona Department of Transportation Motor Vehicle Division) to apply for an "abandoned title," although he knew he could do so.

¶4      The trial court instructed the jury on two theories of theft of a means of transportation. First, it gave an instruction on theft by control, which requires proof that a person knowingly and without lawful authority "[c]ontrols another person's means of transportation knowing or having reason to know that the property is stolen." A.R.S. § 13-1814(A)(5). Next, and over Dixon's objection, it instructed the jury on theft of lost or

misdelivered property, which requires proof that a person knowingly and without lawful authority "[c]omes into control of another person's means of transportation that is lost or misdelivered under circumstances providing means of inquiry as to the true owner and appropriated [sic] the means of transportation to the person's own or another's use without reasonable efforts to notify the true owner." § 13-1814(A)(4). On appeal, Dixon contends the evidence did not warrant an instruction on theft of lost or misdelivered property and the prosecutor's argument to the jury prejudicially misconstrued the meaning of the term "lost" as used in § 13-1814(A)(4).

## Meaning of "Lost"

¶5        Dixon argues that the term "lost" in this context requires evidence of accidental loss or of some inadvertence by the property owner and that this meaning necessarily eliminates the possibility that property can be both lost and stolen. This proposed interpretation was consistent with Dixon's defense, which essentially consisted of his claim that he had found what he believed was an abandoned vehicle and neither knew, nor should have known, it had been stolen. Under this theory, Dixon sought to avoid conviction under § 13-1814(A)(5) based on his lack of actual or constructive knowledge and to avoid conviction under § 13-1814(A)(4) by urging the vehicle he had found was not "lost" within the purview of the statute. The trial court reasoned, however, that when the owner of a vehicle has reported it stolen, "the vehicle is still lost to the victim" and gave the instruction on theft of lost or misdelivered property notwithstanding Dixon's objection.

3

¶6 The prosecutor, in turn, argued to the jury that "[the victim] lost the use of the truck. He lost the ability to get in his truck and do whatever he wanted to do with it. On May 28, to [the victim], that truck was lost, and he had reported it stolen." Dixon contends this argument and other consistent statements by the prosecutor were prejudicial because, "with no evidence to show that [he] took the truck from the golf course or . . . had knowledge of the truck's stolen status, [the state] could only" secure a conviction under § 13-1814(A)(4). We disagree with Dixon on both his interpretation of the statute and the nature of the evidence.

¶7 Statutory interpretation presents questions of law that we review *de novo*. *State v. Fell*, 203 Ariz. 186, ¶ 6, 52 P.3d 218, 220 (App. 2002). "'[O]ur primary goal is to discern and give effect to the legislature's intent.'" *State v. Tyszkiewicz*, 209 Ariz. 457, ¶ 5, 104 P.3d 188, 190 (App. 2005), *quoting Fell*, 203 Ariz. 186, ¶ 6, 52 P.3d at 220. To do so, we need not look beyond the plain language of a statute, unless it is unclear. *Id.* In examining the language of a statute, "we give words their plain and ordinary meaning," absent a clear legislative intent to apply a special meaning. *State v. Cotton*, 197 Ariz. 584, ¶ 6, 5 P.3d 918, 920 (App. 2000).

¶8 Even adopting Dixon's proposed definition of "lost," we find no merit to his argument that either the trial court or the prosecutor misconstrued the term as used in § 13-1814(A)(4). Dixon cites *Black's Law Dictionary* 946 (6th ed. 1991), which states: "An article is 'lost' when the owner has lost the possession or custody of it, involuntarily and by

4

*any* means, but more particularly by accident or his own negligence or forgetfulness, and when he is ignorant of its whereabouts or cannot recover it by an ordinarily diligent search." (Emphasis added.)  Dixon cites the same source's definition of "lose," which means "[t]o bring to destruction; to ruin; to suffer the loss of; to be deprived of, to part with, especially in an accidental *or unforeseen* manner."  *Id*. at 945 (emphasis added).

¶9        Under the plain meaning of the term "lost," there is no question that § 13-1814(A)(4) was intended to encompass the circumstances present in this case or that the evidence supported giving the instruction.  *See State v. Shumway*, 137 Ariz. 585, 588, 672 P.2d 929, 932 (1983) (jury instruction should be given if evidence reasonably supports it).  Jessie's testimony established he had been involuntarily deprived of the custody of his truck and this event was unforeseen.  He had diligently reported its theft to the police and had no other practical means at his disposal to find it.  The truck was therefore "lost," despite that its disappearance might have originated from a nonaccidental theft by someone other than Dixon.  Jessie testified he had not given Dixon permission to possess or drive the truck.  Dixon's own testimony established he knowingly had controlled the truck; its California license plate had been attached, providing at least one means of inquiry as to its true owner; he had appropriated it for his own use; and he had made no effort whatsoever to notify the owner of its whereabouts.  Thus, there was evidence supporting every element of § 13-1814(A)(4).  Accordingly, we reject Dixon's arguments that the trial court abused its discretion in giving the instruction on theft of lost or misdelivered property and that the

5

evidence was insufficient to support his conviction under § 13-1814(A)(4). *See State v. Arredondo*, 155 Ariz. 314, 316, 746 P.2d 484, 486 (1987) ("To set aside a jury verdict for insufficient evidence it must clearly appear that upon no hypothesis whatever is there sufficient evidence to support the conclusion reached by the jury.").

¶10        Likewise, we reject Dixon's argument that the evidence was insufficient to support the verdict under § 13-1814(A)(5). When reviewing a verdict for sufficiency of the evidence, we view the evidence in the light most favorable to upholding the verdict and will affirm if "a rational trier of fact could have convicted the defendant of the crime in question." *State v. McGill*, 213 Ariz. 147, ¶ 17, 140 P.3d 930, 935 (2006). Dixon's testimony concerning the circumstances under which he had come to possess the truck, drive it, and attempt to change its color, as well as his claims that he believed the truck had been abandoned as part of an "insurance scam," were all subject to the jury's scrutiny for weight and credibility. Even accepting Dixon's testimony as true, a rational jury could have rejected his contention that he lacked any reason to know the truck had been stolen, particularly in light of evidence the state presented that the dashboard, steering column, and ignition switch all had been damaged. In addition, Dixon had initially told a police officer he had purchased the truck for $600, a story he testified he had fabricated because he "didn't want to be charged with a stolen truck." Given this evidence, a rational jury could find Dixon guilty of the crime of theft of a means of transportation under § 13-1814(A)(5).

6

**Restitution Award**

¶11 Dixon also challenges the restitution order that requires him to pay $6,345 to the victim and his mother, co-owners of the truck. A victim is entitled to restitution "in the full amount of the economic loss as determined by the court." A.R.S. § 13-603(C). "A court has wide discretion in setting restitution based on the facts of each case." *State v. Ellis*, 172 Ariz. 549, 551, 838 P.2d 1310, 1312 (App. 1992). We will uphold a restitution award if it bears a reasonable relationship to the loss sustained. *State v. Lindsley*, 191 Ariz. 195, 197, 953 P.2d 1248, 1250 (App. 1997).

¶12 Dixon first claims the restitution award lacked evidentiary support. We disagree. Although Dixon characterizes the evidence supporting the amount of restitution as "unsubstantiated," the order is based, in part, on information contained in a presentence report. The report included an itemized list of personal property or automotive features for which restitution was sought, each with an assigned value, as well as a statement that Jessie's mother had reported the amount of restitution sought was for items "not covered by their insurance claim." At sentencing, Dixon's counsel stated she had believed, based on "a conversation with the County Attorney[,] that there would be no restitution sought in [this] case." She further avowed she had consequently ceased investigative efforts aimed at contesting the victims' claim for restitution. However, Dixon requested neither a continuance nor a restitution hearing. *See State v. Steffy*, 173 Ariz. 90, 93, 839 P.2d 1135,

7

1138 (App. 1992) (defendant may object at time of sentencing to amount of restitution or request hearing on issue).

¶13      Although the evidence of value and absence of insurance coverage for the listed items contained in the presentence report was uncorroborated by other evidence, it was nonetheless uncontested evidence that was "substantiated" by the victims' claims. Dixon has cited no authority establishing that a court, in setting restitution, may not rely upon information provided in a presentence report.  Indeed, the statutory sentencing scheme implies that the presentence report and victim impact statement will provide restitution information for the sentencing court's consideration.  *See* A.R.S. §§ 12-253(4) (probation officer shall inquire into financial impact on victim and victim's immediate family); 13-603(C) (sentencing court shall require convicted person to pay restitution); 13-804(G) (if evidence is insufficient to determine amount of restitution or manner of payment, court may hold hearing at which state "may present evidence or information"); 13-4410(C)(2) (victim impact statement may include "economic loss or property damage suffered").  And several cases cited by the state suggest a presentence report provides sufficient evidence, notwithstanding Dixon's efforts to distinguish them.  *See Shenah v. Henderson*, 106 Ariz. 399, 476 P.2d 854 (1970); *State v. Holguin*, 177 Ariz. 589, 870 P.2d 407 (App. 1993); *State v. Mears*, 134 Ariz. 95, 654 P.2d 29 (App. 1982); *see also State v. Nash*, 143 Ariz. 392, 402, 694 P.2d 222, 232 (1985) (sentencing court may consider information obtained from

8

out-of-court sources so long as information is disclosed to defendant who has opportunity to explain or deny it).

¶14 Dixon also challenges the restitution order because the trial court initially expressed reservations about the evidence and offered to reconsider the order if Dixon produced conflicting evidence, a portion of the ruling he contends "shifted the burden of proof" to him. The trial court weighed all the evidence before it and, in its discretion, awarded restitution. We do not reweigh the evidence on appeal. *State v. Rodriguez*, 205 Ariz. 392, ¶ 18, 71 P.3d 919, 924 (App. 2003). Whatever the trial court's misgivings might have been in reaching its determination, the evidence supports the conclusion the court ultimately reached, and the order "bears a reasonable relationship to the loss sustained." *Lindsley*, 191 Ariz. at 197, 953 P.2d at 1250; *see also United California Bank v. Prudential Ins. Co. of America*, 140 Ariz. 238, 308, 681 P.2d 390, 460 (App. 1983) ("Appeals lie from findings of fact, conclusions of law, and judgments, not from ruminations of the trial judge."). Nothing about the trial court's offer to reopen the matter on receipt of new information from Dixon shows the court assessed the information already before it by an improper standard. Rather, the offer is reasonably viewed as a measure of accommodation for Dixon's claim of surprise that the victims had sought restitution.

¶15 Our conclusion also vitiates Dixon's remaining claim, that the trial court "granted a windfall" to the victims. That argument rests solely on questions of credibility,

9

another province of the trial court upon which we do not intrude. *See State v. Alawy*, 198 Ariz. 363, n.2, 9 P.3d 1102, 1104 n.2 (App. 2000).

## Disposition

¶16       Dixon's convictions and sentences are affirmed.

_____
PHILIP G. ESPINOSA, Judge

CONCURRING:


_____
PETER J. ECKERSTROM, Presiding Judge


_____
J. WILLIAM BRAMMER, JR., Judge