IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO

_____

THE STATE OF ARIZONA,
*Appellee,*

*v.*

VICTOR KYLE LIZARDI,
*Appellant.*

No. 2 CA-CR 2013-0188
Filed April 11, 2014

_____

Appeal from the Superior Court in Pima County
No. CR20112911001
The Honorable Teresa Godoy, Judge

**AFFIRMED**

_____

COUNSEL

Thomas C. Horne, Arizona Attorney General
Joseph T. Maziarz, Section Chief Counsel, Phoenix
By Jonathan Bass, Assistant Attorney General, Tucson
*Counsel for Appellee*

Lori J. Lefferts, Pima County Public Defender
By Abigail Jensen, Assistant Public Defender, Tucson
*Counsel for Appellant*

_____

**OPINION**

Judge Miller authored the opinion of the Court, in which Presiding
Judge Vásquez and Chief Judge Howard concurred.

_____

M I L L E R, Judge:

¶1      Victor Lizardi appeals his convictions and sentences for first-degree murder and possession of a deadly weapon by a prohibited possessor, contending the trial court erred in its premeditation instruction, its determination he was "on parole" at the time of the prohibited possessor offense, and its order for restitution to the Crime Victim Compensation Fund.   For the following reasons, we affirm the convictions and sentences.

## Factual and Procedural Background

¶2      We view the facts in the light most favorable to sustaining the jury's verdicts and resolve all inferences against Lizardi.   *See State v. Stroud*, 209 Ariz. 410, ¶ 6, 103 P.3d 912, 914 (2005).   In August 2011, Lizardi was visiting friends in their apartment.  He showed one of the residents bullets he had placed in the cabinet above the refrigerator.  Lizardi left the apartment, but returned later with a gun, which appeared to be unloaded because he cocked it repeatedly.  After another resident, D.C., told Lizardi to leave with the gun, D.C. saw him reach for the top of the refrigerator before walking to the outside door.  Shortly thereafter, D.C. heard a gunshot, ran toward the sound, and observed Lizardi running out of the apartment.  The victim, M.S., was dead on his bed from a single gunshot wound to the mouth.  Soon after the shooting, Lizardi sent a text message to one of the residents saying, "Don't say sh--.  I did everyone a favor."

¶3      Lizardi was arrested and charged with first-degree murder and possession of a deadly weapon by a prohibited possessor.  At his request, the counts were severed, and Lizardi agreed that the trial court would act as fact finder for the prohibited possessor count.  The jury found him guilty of murder, and the court found him guilty on the other count.  Lizardi received concurrent sentences, the longest of which was life in prison without the possibility of release on any basis for twenty-five years.

**Premeditation Instruction**

**¶4**   Lizardi argues the trial court erred in instructing the jury that premeditation could involve a short period of reflection. He contends the temporal portion of the instruction was unnecessary because "there was ample evidence that premeditation in this case could have occurred over a substantial period of time, if it occurred at all." Lizardi also argues the instruction improperly emphasized the passage of time, relieving the state from its burden of proving premeditation.

**¶5**   We review a court's ruling on a jury instruction for an abuse of discretion. *State v. Dann*, 220 Ariz. 351, ¶ 51, 207 P.3d 604, 616-17 (2009). The court should reject instructions that misstate the law or would be misleading or confusing to the jury; "the test is whether the instructions adequately set forth the law applicable to the case." *State v. Rodriguez*, 192 Ariz. 58, ¶ 16, 961 P.2d 1006, 1009-10 (1998). Further, "in evaluating the jury instructions, we consider the instructions in context and in conjunction with the closing arguments of counsel." *State v. Johnson*, 205 Ariz. 413, ¶ 11, 72 P.3d 343, 347 (App. 2003). Here, the trial court instructed the jury:

> Premeditation means that the defendant intended to kill another human being or knew he would kill another human being, and that after forming that intent or knowledge reflected on the decision before killing. It is this reflection regardless of the length of time in which it occurs that distinguishes the first degree murder from second degree murder.
>
> An act is not done with premeditation if it is the instant effect of a sudden quarrel or heat of passion resulting from adequate provocation.
>
> The time needed for reflection is not necessarily prolonged and the space

between the intent or knowledge to kill and
the act of killing may be very short.

**¶6**          Lizardi correctly notes there was evidence that his time to reflect could have started when he left the house to get the gun. From this possibility of long reflection, he relies on *State v. Thompson*, 204 Ariz. 471, 65 P.3d 420 (2003), for the proposition that the last sentence of the trial court's above instruction should be used "[o]nly when the facts of a case require it." *Id.* ¶ 32. The possibility of long reflection, however, does not negate evidence the reflection may have been shorter, starting with the decision to load the gun, the decision not to leave the apartment when told, or at another time. Even if the jury concluded Lizardi had considered murder for only a brief moment, it would require the last sentence of the instruction to determine how to apply the law.

**¶7**          Our conclusion is supported by the absence of a specific indication in *Thompson* about when the last sentence would be appropriate, or that use of the sentence could result in error. *State v. Nelson*, 229 Ariz. 180, ¶ 22, 273 P.3d 632, 638 (2012) ("*Thompson* does not suggest that giving the entire instruction constitutes error."). Additionally, neither *Thompson* nor any case citing it supports Lizardi's contention that the presence of evidence suggesting long reflection precludes the use of the last sentence of the instruction. *See id.* ¶¶ 22-23; *State v. Lehr*, 227 Ariz. 140, ¶¶ 53-59, 254 P.3d 379, 391 (2011).

**¶8**          In *Lehr*, our supreme court considered whether the last sentence was authorized in a case in which victims were killed by blunt force trauma to the head and bloody rocks were found beside the bodies. 227 Ariz. 140, ¶¶ 53-59, 254 P.3d at 391. The defendant argued the instruction, coupled with the prosecutor's closing argument that defendant could have formed the necessary intent as he picked up the rock, allowed the jury to convict him without proof of actual reflection. The court concluded that the instruction was not error, observing that the state did not rely on the passage of time alone. *Id.* ¶¶ 57-58. Likewise, in *Nelson*, the court reviewed such an instruction for fundamental error when evidence showed the defendant had left the scene, walked to a store, bought the murder weapon, walked back to the scene, and murdered the victim.

229 Ariz. 180, ¶¶ 22-23, 273 P.3d at 638.  The court found no error, and did not indicate that the length of time involved dictated whether the last sentence was necessary.  *Id.* ¶ 23.  Lizardi contends these cases are distinguishable on their facts.  But the distinctions are not essential to their analysis.  Neither opinion indicates what length of time is proper for the instruction.  *Lehr* appears to deal with a potentially short time frame in deciding to pick up a rock and use it as a weapon, *Lehr*, 227 Ariz. 140, ¶ 58, 254 P.3d at 391, and *Nelson* concerns a potentially long period in which the defendant left to purchase a weapon, *Nelson*, 229 Ariz. 180, ¶ 23, 273 P.3d at 638.

**¶9**        Lizardi also argues that the purported error in including the last sentence of the instruction was compounded by the state's closing arguments, in which the prosecutor stated that the reflection required "could be seconds" or could be "instantaneous." But the prosecutor's argument was based on an accurate assessment of what the jury could conclude.  The state did not improperly emphasize the passage of time alone to prove premeditation. Rather, it presented circumstantial evidence of premeditation: Lizardi brought bullets to the house, left to get a gun, and loaded it at the house.  In closing arguments, the state emphasized the affirmative steps Lizardi had taken, arguing, "And how do you load a gun?  Well, you put bullets in . . . the magazine, they call it, or the clip, and then you put the clip in the gun, then you rack the gun. That's thinking about what you're doing."  Reviewing preparatory steps, even short ones, does not negate the premeditation element. *See Nelson*, 229 Ariz. 180, ¶ 23, 273 P.3d at 638 (where prosecutor highlighted decisions to walk to store to buy weapon before returning to use it, prosecutor's mention that time to reflect may be short not improper).

**¶10**       Finally, to the extent Lizardi argues *Thompson* specifically disapproved of any emphasis on shortened time and use of the word "instantaneous" by a prosecutor, he is mistaken.  First, the disapproval of the "instantaneous" instruction in *Thompson* relied in part on it being paired with the erroneous jury instruction that "proof of actual reflection was not required."   204 Ariz. 471, ¶¶ 26-27, 65 P.3d at 427.  There was no such instruction here. Second, even where the prosecutor mentions "instantaneous," there

is no error if the state focuses on the evidence of premeditation. *See e.g.*, *State v. Kiles*, 222 Ariz. 25, ¶¶ 21-22, 213 P.3d 174, 180 (2009) (although prosecutor noted time required to premeditate could be "instantaneous," argument properly focused on premeditation evidence). The trial court did not abuse its discretion in allowing the last sentence of the premeditation instruction.

## *Alleyne* Error

**¶11**        Lizardi next contends the trial court erred when it denied his request that the jury decide whether he had been on parole on the date of the prohibited possessor offense. A finding he had been "on parole" required that Lizardi be sentenced to at least the presumptive term on that count. *See* A.R.S. § 13-708(C).

**¶12**        We review de novo sentencing issues involving constitutional law. *State v. Urquidez*, 213 Ariz. 50, ¶ 11, 138 P.3d 1177, 1180 (App. 2006). Lizardi relies on a recent opinion of the United States Supreme Court, *Alleyne v. United States*, ___ U.S. ___, 133 S. Ct. 2151 (2013). There, the Court held that the Sixth Amendment right to a jury trial requires that facts increasing the mandatory minimum penalty be submitted to a jury. *Id.* at ___, 133 S. Ct. at 2158. In so holding, the court expanded the *Apprendi* doctrine, which previously had held that facts that increase the statutory maximum penalty are elements of the offense and must be submitted to the jury. *Id.* at ___, 133 S. Ct. at 2160; *see also Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). The court also expressly overruled *Harris v. United States*, 536 U.S. 545 (2002), in which the Court had reached the opposite conclusion. *Alleyne*, ___ U.S. at ___, 133 S. Ct. at 2155.

**¶13**        At the time of Lizardi's trial,[1] this issue was governed by *Harris*. After the jury reached its verdict and was dismissed, the trial court began the evidentiary hearing on whether Lizardi was on parole on the date he possessed the weapon. Lizardi objected,

---

[1]As noted earlier, Lizardi waived his right to a jury trial for the prohibited possessor count but he had not waived a jury finding for the "on parole" allegation.

arguing that the jury should have made that determination, but the court overruled the objection stating, "I think the allegation of on parole can be proven to the Court because it doesn't make what's available more than the presumptive, it just makes it the presumptive." The court then found Lizardi had been "on parole"[2] at the time of the prohibited possessor offense, which meant the lowest sentence Lizardi could receive was the presumptive term of 4.5 years, rather than the mitigated term of 2.25 years. *See* A.R.S. §§ 13-703(I), 13-708(C) Because this finding increased Lizardi's minimum sentence, the court's failure to submit the facts supporting his release status to the jury constituted error under *Alleyne*. *See* ___ U.S. at ___, 133 S. Ct. at 2158.[3]

**¶14** We must next consider whether this error is structural error, requiring automatic reversal, or trial error, subject to harmless or fundamental error review. *State v. Henderson*, 210 Ariz. 561, ¶ 12, 115 P.3d 601, 605 (2005). A structural error infects the entire trial from beginning to end, and includes errors such as a biased trial judge, denial of defense counsel, or defective reasonable doubt jury instructions. *State v. Ring (Ring III)*, 204 Ariz. 534, ¶¶ 45-46, 65 P.3d 915, 933-34 (2003). If an error is structural, prejudice is presumed, and we must reverse. *State v. Valverde*, 220 Ariz. 582, ¶ 10, 208 P.3d 233, 236 (2009); *Ring III*, 204 Ariz. 534, ¶ 45, 65 P.3d at 933.

**¶15** In contrast, when a defendant preserves his objection to trial error, the state has the burden of proving "beyond a reasonable

---

[2]Although the trial court found Lizardi had been on parole, we observe that the legislature eliminated the possibility of parole for felonies committed after January 1, 1994. *State v. Rosario*, 195 Ariz. 264, ¶ 26, 987 P.2d 226, 230 (App. 1999). The distinction is not relevant to the decision here because a felony offense committed while released on community supervision also results in elimination of any sentence less than the presumptive term. A.R.S. § 13-708(C). Moreover, Lizardi did not object to the "on parole" characterization.

[3]While this case was pending, Division One of this court decided *State v. Large*, No. 1 CA-CR 13-0115, 2014 WL 1226731 (Ariz. Ct. App. Mar. 25, 2014), and reached the same result we do here.

doubt that the error did not contribute to or affect the verdict or sentence." *Henderson*, 210 Ariz. 561, ¶ 18, 115 P.3d at 607. Failure to make the objection requires the defendant to prove the error was fundamental and caused him prejudice. *Id.* ¶¶ 19-20.

**¶16**        To determine whether *Alleyne* error is structural or trial error, we look to analogous Arizona cases analyzing *Apprendi*, and its extension in *Blakely v. Washington*, 542 U.S. 296, 303-04 (2004) (defining "statutory maximum" as the maximum penalty a judge may impose without any additional findings). In *Ring III*, our supreme court rejected the contention that *Apprendi* error was structural. 204 Ariz. 534, ¶¶ 44-53, 65 P.3d at 933-36. Because an aggravating circumstance is the functional equivalent of an element of a greater offense, *see Apprendi*, 530 U.S. at 494 n.19, the court determined it should have been found by a jury, *Ring III*, 204 Ariz. 534, ¶¶ 12, 47, 65 P.3d at 926, 934. Therefore, relying on jury instruction cases in which the court failed to instruct on an element of an offense, the court concluded the failure to submit the aggravating factors to the jury did not "infect the trial process from beginning to end." *Id.* ¶ 50; *see also United States v. Cotton*, 535 U.S. 625, 630-33 (2002) (harmless error when trial court made findings on volume of drugs involved, rather than jury); *Neder v. United States*, 527 U.S. 1, 19-20 (1999) (omitting element of offense from jury instructions does not taint trial process).

**¶17**        In *Henderson*, our supreme court addressed *Blakely* and *Apprendi* error in a non-capital context. 210 Ariz. 561, ¶¶ 3, 11-12, 115 P.3d at 604-06. The court contrasted *Neder*, in which an element omitted from a jury instruction constituted trial error, with *Sullivan v. Louisiana*, 508 U.S. 275 (1993), a case in which the United States Supreme Court held that submitting a constitutionally deficient reasonable doubt instruction constituted structural error. *Henderson*, 210 Ariz. 561, ¶¶ 14-15, 115 P.3d at 606. Our supreme court determined *Blakely/Apprendi* error is trial error, because failure to have a jury find an aggravating factor "more closely resemble[d]" the error in *Neder* than the faulty reasonable doubt instruction in *Sullivan*, which had invalidated all of the jury's findings. *Id.* ¶¶ 16-17.

¶18  The *Alleyne* decision is an express extension of the *Apprendi* doctrine. *Alleyne*, ___ U.S. at ___, 133 S. Ct. at 2160. Accordingly, we conclude that an error under *Alleyne* also constitutes trial error, reviewable as either harmless or fundamental error. As in *Henderson*, the failure to have a jury find an aggravating factor that increases a statutory minimum sentence affects an element of the greater offense, and does not invalidate every finding made by the jury. *See id.* ¶ 17. Further, federal circuit courts which have considered the issue also have concluded that *Alleyne* errors may be reviewed for harmless error.[4] *See United States v. Harakaly*, 734 F.3d 88, 94 (1st Cir. 2013) (listing cases and applying harmless error standard); *see also United States v. Lara-Ruiz*, 721 F.3d 554, 557 (8th Cir. 2013) (noting harmless error standard but applying plain error due to failure to preserve argument).

¶19  Because Lizardi objected below, we review for harmless error.[5] *Henderson*, 210 Ariz. 561, ¶¶ 17-18, 115 P.3d at 607. A trial error is harmless "if we can say, beyond a reasonable doubt, that the error did not contribute to or affect the verdict" or sentence. *State v. Bible*, 175 Ariz. 549, 588, 858 P.2d 1152, 1191 (1993); *see also Henderson*, 210 Ariz. 561, ¶ 18, 115 P.3d at 607. We consider the error "in light of all of the evidence." *Bible*, 175 Ariz. at 588, 858 P.2d at

---

[4]All federal circuit courts previously have held that *Apprendi* error is trial error. *See Henderson*, 210 Ariz. 561, ¶ 12 & n.3, 115 P.3d at 605-06 & n.3 (listing cases).

[5]The state contends Lizardi waived his right to relief for all but fundamental, prejudicial error because he did not raise the issue until the bench trial, after the jury had been excused. It does not cite any authority on point or otherwise develop the argument; therefore, we do not address it. *See* Ariz. R. Crim. P. 31.13(c)(1)(vi); *State v. Burdick*, 211 Ariz. 583, n.4, 125 P.3d 1039, 1042 n.4 (App. 2005). Further, in *Large*, 2014 WL 1226731, ¶¶ 17-19, the defendant did not object and Division One "recognize[d] an inherent unfairness in penalizing [the defendant] on appeal when the legal authority supporting his position developed only after his conviction and sentence," and determined "the error was not prejudicial even under harmless error review."

1191. We may find an error to have been harmless when there is overwhelming evidence of a defendant's guilt. *See, e.g.*, *State v. Davolt*, 207 Ariz. 191, ¶ 64, 84 P.3d 456, 474 (2004) (improperly admitted gruesome crime scene photographs did not contribute to verdict due to strength of remaining evidence).

¶20        Lizardi contends the jury "could have reached a different conclusion than the court on the credibility of the parole officer," who testified about Lizardi's release status. Lizardi, however, never cross-examined the parole officer or offered any challenge to her testimony. The officer testified she recognized Lizardi from her supervision of him and identified him as the person whose photograph, biographical information, and criminal records appeared in the department of corrections documents offered into evidence by the state. The records showed Lizardi had been convicted of a felony in Pinal County, placed on community supervised release in July 2011, and absconded on August 3, 2011. He committed the prohibited possessor offense on August 14, 2011. Lizardi did not object to the admission of the criminal records into evidence. The record before us demonstrates that no reasonable jury could fail to find that Lizardi was on release at the time of the prohibited possessor offense. *See Harakaly*, 734 F.3d at 96 (trial court's finding defendant responsible for more than fifty grams of methamphetamine harmless where overwhelming evidence indicated greater weights); *cf. State v. Aleman*, 210 Ariz. 232, ¶ 34, 109 P.3d 571, 582 (App. 2005) (*Blakely* error in trial court's findings of sentencing aggravators harmless where evidence indisputably showed victims were minors and defendant had prior conviction). The *Alleyne* error here was harmless.

## Restitution Order

¶21        Lizardi lastly contends the trial court erred when it ordered him to pay restitution "in the total absence of supporting evidence." As Lizardi concedes, he did not raise this issue below, and we therefore review only for fundamental error. *See State v. Lewis*, 222 Ariz. 321, ¶ 13, 214 P.3d 409, 413 (App. 2009) (defendant forfeits for review restitution objections not made below).

¶22        Our supreme court has defined the losses for which restitution should be ordered:  the loss must be (1) economic, (2) one that would not have incurred but for the defendant's criminal offense, and (3) directly caused by the defendant's criminal conduct. *State v. Wilkinson*, 202 Ariz. 27, ¶ 7, 39 P.3d 1131, 1133 (2002). Although an award may not be "based on mere speculation," *see State v. Barrett*, 177 Ariz. 46, 49, 864 P.2d 1078, 1081 (App. 1993), a trial court may rely on information contained in a presentence report and victim impact statement, *see State v. Dixon*, 216 Ariz. 18, ¶ 13, 162 P.3d 657, 660-61 (App. 2007).  "Indeed, the statutory sentencing scheme implies that the presentence report and victim impact statement will provide restitution information for the sentencing court's consideration." *Id.*

¶23        Here, the presentence report included a notation that the victim's legal representative did not request restitution because the family received assistance from the Crime Victim Compensation Fund.  The compensation fund, in turn, requested $1,440.19 in restitution for funeral expenses.  Lizardi did not object to those calculations.  Although the actual amount of the funeral was not corroborated, Lizardi did not offer evidence contesting it, and the fund's request for restitution was supported by the legal representative's statement that the fund had assisted the family.  The trial court did not err in awarding restitution.  *See id.* ¶¶ 12-13 (victims' uncorroborated list of personal property contained in presentence report sufficient to support award).

## Disposition

¶24        For the foregoing reasons, Lizardi's convictions and sentences are affirmed.