NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAYBE BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

---

STATE OF ARIZONA, *Appellee*,

*v.*

DANNY RAY ENRIQUEZ *Appellant*.

Nos. 1 CA-CR 14-0235; 1 CA-CR 14-0256 (Consolidated)
FILED 3-3-2015

---

Appeal from the Superior Court in Maricopa County
Nos. CR2012-143397-002; CR2013-439984-001 (Consolidated)
The Honorable Jeanne M. Garcia, Judge

**AFFIRMED**

---

COUNSEL

Arizona Attorney General's Office, Phoenix
By Adriana M. Zick
*Counsel for Appellee*

Maricopa County Office of the Legal Defender, Phoenix
By Marty Lieberman
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Patricia K. Norris joined.

---

**H O W E**, Judge:

¶1　　　　Danny Ray Enriquez appeals the trial court's finding of his probation status for sentencing purposes and its sentencing order for case CR2012-143397-002 ("2012 offense"). For the following reasons, we affirm the court's finding of Enriquez's probation status and correct his sentence for the 2012 offense to include 23 days of presentence incarceration credit.

## FACTS AND PROCEDURAL HISTORY

¶2　　　　Around noon on August 21, 2013, Sergio Fregoso was "just hanging out" in his backyard when he heard a car drive through his back alley. The car stopped in the alley between his house and one of his neighbors' houses. Fregoso climbed onto a fountain in his yard to see what was happening. Two "young kids" got out of the car and jumped over his neighbor's six-foot cinder block wall. Fregoso saw the kids enter his neighbor's arcadia window, carry a flat screen television out of the house and over the wall, and place it into their car. They then drove away. Fregoso did not call the police because he "figured that was it" and "didn't expect much more to come of it."

¶3　　　　Twenty minutes later, still out in his backyard, Fregoso saw two individuals enter the same neighbor's house, although he was not sure whether they were the same individuals as before. These two individuals also climbed the cinder block wall and entered the home. Fregoso called the police and told the operator that two kids had broken into his neighbor's house 20 minutes ago and that two other individuals had entered the same house. But he was unable to see what the individuals were doing inside the house. Although he heard glass and bottles move inside the house, Fregoso heard no voices. He saw one of the individuals "peeking through the side gate and the wall." The call ended when Fregoso heard a helicopter flying over his house, indicating that the police had arrived. The call lasted about nine minutes.

¶4            According to Fregoso, soon after Officer Darrell Kriplean arrived at the scene, the officer told the "peeking" individual—who turned out to be Enriquez—to "hop over the fence." Enriquez did so and admitted to the officer that he had entered the house. While Officer Kriplean was with Enriquez, Officer James Clark did a protective sweep of the house and found no one. He then drove to Fregoso's house and brought him to the scene. Fregoso then identified Enriquez as one of the individuals he had seen earlier.

¶5            Enriquez was arrested and charged with one count of burglary in the second degree ("2013 offense"). At trial, Officers Kriplean and Clark, and Fregoso made in-court identifications of Enriquez. Enriquez testified on his behalf. He said that on August 21, 2013, he was riding his bike through his back alley in search of plastic or cans to trade for cash. From the corner of his eye he saw a "shattered window, a broke – a kitchen window." He also saw that the arcadia door was "wide open," so he "hopped over to see if anybody was inside the house." He entered the house, but did not see anyone inside. He testified that no one responded when he asked, "[I]s there anyone in the house? If you hear me say something." Because he saw no one inside, he left the house and then heard the helicopter above. The helicopter pilot ordered him to "go to the front of the house." He complied and met Officer Kriplean, who told him "to hop over the fence."

¶6            While the jury was deliberating, the court asked the State whether it gave "any thought to the aggravation phase" and if it needed to address aggravation "before sentencing or . . . [did the State] want the jury to determine the probation issue?" The State replied: "That can be done at sentencing." Defense counsel did not object. The jury returned and found Enriquez guilty.

¶7            At Enriquez's sentencing hearing, the trial court stated that the State had to prove that Enriquez was on probation at the time he committed his 2013 offense, unless Enriquez admitted or conceded that he was on probation. Enriquez's counsel stated, "[H]e will admit to the Court that he was on probation." When the court asked Enriquez whether he was willing to stipulate that he was on probation, he responded, "That's fine."

¶8            The State then read the details of the 2012 offense that gave rise to his probation into the record: "He was on probation for a possession of burglary tools felony, committed on August 18th, 2012. That he was on two years of unsupervised probation, and on the date of this offense, August 21, 2013, he was still on probation on that matter, CR2012-143397-

002." The court added that it sentenced Enriquez on January 30, 2013, to two years of probation. When the court asked Enriquez whether the court or the State had said anything he disagreed with, Enriquez responded no. The court found that Enriquez was on probation when he committed the 2013 offense.

**¶9** Based on the determination of guilt and the fact that Enriquez was on probation when the 2013 offense occurred, the trial court sentenced him to the presumptive term of incarceration with one prior felony conviction. Thus, for the 2013 offense, the court ordered 6.5 years of imprisonment with 154 days of presentence incarceration credit. For the 2012 offense, the court revoked Enriquez's probation and sentenced him to six months' imprisonment, to run consecutively with the 2013 offense, with no presentence incarceration credit. After sentencing, pursuant to A.R.S. § 13–603(L), the court found that the sentence imposed for the 2013 offense was "clearly excessive." It recommended that the Board of Executive Clemency modify Enriquez's sentence to a term of 1.75 years of incarceration. Enriquez timely appealed the 2013 and 2012 offenses. We consolidated the cases.

## DISCUSSION

### 1. Probation Status

**¶10** Enriquez argues that absent an effective waiver, the trial court erred by finding that he was on probation when he committed the 2013 offense because a jury should have determined his probation status. We review de novo sentencing issues regarding constitutional law. *State v. Lizardi*, 234 Ariz. 501, 504 ¶ 12, 323 P.3d 1152, 1155 (App. 2014). Because the trial court's finding of Enriquez's probation status did not prejudice him, we find no fundamental error and therefore affirm.

**¶11** Pursuant to the Sixth Amendment right to a jury trial, any fact—other than the fact of a prior conviction—that increases the prescribed statutory maximum penalty must be submitted to a jury and proved beyond a reasonable doubt. *State v. Large*, 234 Ariz. 274, 278 ¶ 12, 321 P.3d 439, 443 (App. 2014) (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). The right applies with equal force to facts that increase the prescribed statutory minimum penalty. *Id.* (citing *Alleyne v. United States*, 133 S. Ct. 2151, 2160 (2013)). Because a finding of probation status increases a minimum sentence, it must be submitted to a jury and found beyond a reasonable doubt. *See State v. Gross*, 201 Ariz. 41, 45 ¶ 19, 31 P.3d 815, 819 (App. 2001); *Large*, 234 Ariz. at 280 ¶ 16, 321 P.3d at 445 (extending *Gross* to

a defendant's release status when it will expose him to a higher mandatory minimum sentence). But a defendant may waive this right if his stipulation is made knowingly, voluntarily, and intelligently. *State v. Brown*, 210 Ariz. 534, 543 ¶ 24, 115 P.3d 128, 137 (App. 2005); *see also State v. Brown*, 212 Ariz. 225, 231 ¶ 26, 129 P.3d 947, 953 (2006) (citing *Blakely v. Washington*, 542 U.S. 297, 310 (2004)) ("[T]he Sixth Amendment right to jury trial with respect to an aggravating factor necessary to impose a sentence remains inviolate unless . . . the defendant has appropriately waived his right to jury trial with respect to these aggravating factors.").

¶12        A denial of this right—"*Apprendi* error"—constitutes "trial error, reviewable as either harmless or fundamental error." *Lizardi*, 234 Ariz. at 506 ¶ 18, 323 P.3d at 1157. When a party fails to object properly, however, we review solely for fundamental error. *State v. Lopez*, 217 Ariz. 433, 435 ¶ 4, 175 P.3d 682, 684 (App. 2008) (citing *State v. Henderson*, 210 Ariz. 561, 567 ¶ 19, 115 P.3d 601, 607 (2005)). Fundamental error is "error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the defendant could not possibly have received a fair trial." *Henderson*, 210 Ariz. at 567 ¶ 19, 115 P.3d at 607 (citation omitted). A defendant must establish both that fundamental error exists and that the error caused him prejudice. *Id.* ¶ 20. *Apprendi* error is prejudicial if the defendant shows that "a reasonable jury, applying the appropriate standard of proof, could have reached a different result than did the trial judge." *Id.* at 569 ¶ 27, 115 P.3d at 609.

¶13        Enriquez argues that admitting his probation status did not waive his *Apprendi* right because the waiver was not knowing or intelligent. But we need not decide whether the colloquy between the trial court and Enriquez was sufficient such that he waived his right. To the extent that it was insufficient, any error did not prejudice him because no reasonable jury could have reached a different result than did the trial court.

¶14        The record shows unequivocally that Enriquez was on probation when he committed the 2013 offense. Enriquez testified at trial that he was convicted of a felony and sentenced on January 30, 2013. He admitted during his sentencing hearing that on the date of the 2013 offense, he was still on probation, which began on January 30, 2013, for possession of burglary tools, a felony. The same judge presided over his 2013 and 2012 offenses and stated that it sentenced him on January 30, 2013, for the 2012 offense. Enriquez's Department of Correction ("DOC") record—which the trial court had and which includes his photograph and date of birth— established that he was placed on probation for two years beginning

January 30, 2013, for possession of burglary tools, a class six felony. No evidence challenges the accuracy of the DOC record.

**¶15** Enriquez counters, however, that he was prejudiced because had he known of his right for a jury to determine his probation status, he would not have stipulated it. We disagree. Fundamental error review places the burden on Enriquez to show that "a reasonably jury, applying the appropriate standard of proof, could have reasoned a different result." *Henderson*, 210 Ariz. at 569 ¶ 27, 115 P.3d at 609. The inquiry does not focus on what Enriquez should have known, but rather on if a reasonable jury could have reached a different result than did the trial court. We conclude that it could not.

**¶16** Enriquez further maintains that he was constitutionally entitled to have his probation status determined by the same jury that decided guilt. We disagree. "[A] defendant holds no absolute right to a penalty trial with the same judge or jurors who heard the evidence on guilt." *State v. Anderson*, 210 Ariz. 327, 347 ¶ 81, 111 P.3d 369, 389 (2005) (citing *State v. Ring*, 204 Ariz. 534, 551 ¶¶ 39–40, 65 P.3d 915, 932 (2003)). Accordingly, based on the evidence showing that Enriquez was on probation when he committed the 2013 offense, a reasonable jury would not have reached a different result than did the trial court. Enriquez was not prejudiced by the court's finding of his probation status, and consequently, he has not established fundamental error.

## 2. Presentence Incarceration Credit

**¶17** Enriquez contends—and the State agrees—that the trial court erred by not granting him presentence incarceration credit for his 2012 offense. Specifically, he argues that he was in custody from August 15, 2012, to September 6, 2012, pending resolution of his 2012 offense, and therefore, he is entitled to 23 days of presentence incarceration credit. We agree. *See* A.R.S. § 13–712(B) (providing that a defendant is entitled to credit for "[a]ll time actually spent in custody" credited against the term of imprisonment imposed). Consequently, we correct Enriquez's sentence for the 2012 offense to include 23 days of presentence incarceration credit. *See* A.R.S. § 13–4037 (providing that an appellate court may "correct the sentence to respond to the verdict or finding"); Ariz. R. Crim. P. 31.17 (providing that an appellate court may "reverse, affirm, or modify the action of the lower court and issue any necessary and appropriate orders").

## CONCLUSION

¶**18** For the foregoing reasons, we affirm the trial court's finding of Enriquez's probation status and correct his sentence for the 2012 offense to include 23 days of presentence incarceration credit.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama