NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Respondent,*

*v.*

SHERRY LYNN MATZDORFF, *Petitioner.*

No. 1 CA-CR 21-0050 PRPC
FILED 9-23-2021

Petition for Review from the Superior Court in Mohave County
No. S8015CR201701015
The Honorable Derek C. Carlisle, Judge

**REVIEW GRANTED; RELIEF DENIED**

COUNSEL

Mohave County Attorney's Office, Kingman
By Matthew J. Smith
*Counsel for Respondent*

Rideout Law PLLC, Lake Havasu City
By Bradlee H. Rideout, Wendy Marcus
*Counsel for Petitioner*

------------------------------

**MEMORANDUM DECISION**

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Samuel A. Thumma and Chief Judge Kent E. Cattani joined.

------------------------------

**C A M P B E L L**, Judge:

¶1             Sherry Lynn Matzdorff petitions this court for review from the superior court's denial of her request for post-conviction relief, in which she contested the court's restitution order. For the reasons below, we grant review but deny relief.

## BACKGROUND

¶2             Matzdorff operated a home design and construction company that went out of business before fulfilling all of its contractual obligations. After investigating complaints by three clients that Matzdorff had taken their money without performing contracted work, the State charged her with three counts of forgery, three counts of theft, and one count of fraudulent schemes and artifices.

¶3             Accepting an offer from the State, Matzdorff pled guilty to three counts of theft and agreed to pay "restitution to [the three] victims on all counts including [the] dismissed counts[.]" She admitted that when her company began losing money, she misapplied the victims' funds toward employee and operating expenses, as well as other clients' projects, in the hope that when business improved "she would be able to get the appropriate money back to the appropriate projects." The superior court placed Matzdorff on three years' probation and conducted a restitution hearing.

¶4             After considering testimony and other evidence presented at the hearing, the superior court ordered Matzdorff to pay $281,044.84 in restitution: (1) $186,140.69 to victims A.L. and S.L., (2) $45,381.08 to victim R.Z., (3) $19,523.07 to victims J.T. and N.T., and (4) $30,000 to the Arizona Registrar of Contractors ("ROC"). The award to the ROC was intended to reimburse it for covering a portion of R.Z.'s loss.

¶5             Matzdorff petitioned the superior court for post-conviction relief under Arizona Rules of Criminal Procedure ("Rule") 33. She argued the court had erroneously awarded restitution for the victims'

"commission" and "overhead" payments to her—which accounted for nearly one-half of the total restitution award. She also argued the court had erroneously awarded restitution to the ROC. The court summarily dismissed Matzdorff's petition, and she timely sought our review of that dismissal.

**DISCUSSION**

¶6　　　　We consider the superior court's summary denial of post-conviction relief for an abuse of discretion. *State v. Amaral*, 239 Ariz. 217, 219, ¶ 9 (2016). The court abuses its discretion if it "makes an error of law or fails to adequately investigate the facts necessary to support its decision." *State v. Pandeli*, 242 Ariz. 175, 180, ¶ 4 (2017). We review the court's findings of fact for clear error and its legal conclusions de novo. *Id.* at ¶¶ 3–4. We will affirm its decision "if it legally is correct for any reason." *State v. Roseberry*, 237 Ariz. 507, 508, ¶ 7 (2015).

¶7　　　　By statute, the superior court "shall require" a person "convicted of an offense" to pay "restitution to the person who is the victim of the crime . . . in the full amount of the economic loss as determined by the court." A.R.S. § 13-603(C). For purposes of A.R.S. § 13-603(C), "'economic loss' means any loss incurred by a person as a result of the commission of an offense," but it "does not include losses incurred by the convicted person, damages for pain and suffering, punitive damages or consequential damages." A.R.S. § 13-105(16). For these reasons, to be recoverable, a "loss must be one that the victim would not have incurred but for the criminal conduct" and must have been "directly cause[d]" by the criminal conduct. *State v. Madrid*, 207 Ariz. 296, 298, ¶ 5 (App. 2004) (citing *State v. Wilkinson*, 202 Ariz. 27, 29, ¶ 7 (2002)). "If the loss results from the concurrence of some causal event other than the defendant's criminal conduct, the loss is indirect and consequential and cannot qualify for restitution under Arizona's statutes." *Wilkinson*, 202 Ariz. at 29, ¶ 7. Furthermore, because "[t]he purpose of restitution is to make the victim whole, not to punish," *State v. Ellis*, 172 Ariz. 549, 550 (App. 1992), a restitution award "should not compensate victims for more than their actual loss" and should be reduced by any benefits conferred to a victim by the defendant. *Town of Gilbert Prosecutor's Office v. Downie*, 218 Ariz. 466, 469, 472, ¶¶ 13, 26–27 (2008).

¶8　　　　The State bears the burden of proving a victim's entitlement to restitution by a preponderance of the evidence. *State v. Lewis*, 222 Ariz. 321, 324, ¶ 7 (App. 2009). Our legislature has not "prescribe[d] the standard to apply in calculating restitution," *Ellis*, 172 Ariz. at 550–51, nor has it

defined "the word 'loss' in the context of restitution," *Town of Gilbert*, 218 Ariz. at 468, ¶ 10. , Given the lack of narrowly defined parameters, "[a] court has wide discretion in setting restitution based on the facts of each case." *Ellis*, 172 Ariz. at 551. A restitution award will be upheld "if it bears a reasonable relationship to the loss sustained." *State v. Dixon*, 216 Ariz. 18, 21, ¶ 11 (App. 2007).

**¶9**　　　　Matzdorff agreed to construct four houses for the three victims in this case—two houses for victim R.Z. and one house each for victims A.L./S.L. and J.T./N.T. At the restitution hearing, the superior court considered evidence from the victims and Matzdorff about the contract price for the work, payments made by the victims, the work performed by Matzdorff, and what the victims did with each property after Matzdorff stopped performing.

**¶10**　　　　The superior court used two methods to calculate restitution. For one of the four houses at issue, the court determined the recoverable loss by calculating the difference between the contract price and the amount the victim paid to complete construction. For the other three houses, the court determined the victims' recovery by calculating the amount each victim paid to Matzdorff minus the value each victim received for those payments.

**¶11**　　　　Matzdorff does not challenge the methods used by the superior court but argues it erroneously concluded that the victims' payments of "commission" and "overhead" were recoverable losses. She posits that those payments should not be included in the restitution award because she "earned" them. The State disputes Matzdorff's position, arguing the court appropriately awarded restitution of "commission" and "overhead" payments because Matzdorff obtained those funds from the victims under false pretenses.

**¶12**　　　　The record shows the following about the "commission" payments. Matzdorff testified that each victim contractually agreed to pay a "commission" that was apparently six percent of the contract price for the victim's construction project. According to Matzdorff, the commissions were not based on any sale or acquisition of the victims' lots or houses but were simply "paid on the construction of the house" to the "real estate agent on record." Matzdorff was a real estate agent. She withdrew the entire commission payment for each victim's project out of the "first draw" of the victim's funds for that project. In support of her testimony that she was entitled to the "commission" payments, Matzdorff pointed to a provision in her contracts with the victims that stated, Magic Homes (Matzdorff's

4

company) "is represented by Broadway Realty . . . and may have agents sitting the models and selling homes that are associated with this real estate agency. Real [e]state [a]gents will be compensated by Magic Homes[] for the sale of these homes."

¶13    The superior court did not abuse its discretion by denying Matzdorff's post-conviction claim about the "commission" payments. The record supports the court's findings that Matzdorff was not contractually entitled to the "commission" payments, her receipt of those funds was attributable to her commission of theft or fraud, and the payments provided no value to the victims.

¶14    Turning to the evidence of "overhead" payments, Matzdorff testified that she obtained those payments by totaling her costs for employees and operating expenses, dividing that "overhead" by the number of "draws" for each client's project, and then taking a portion of the total "overhead" from each "draw."

¶15    The superior court did not abuse its discretion by denying Matzdorff's post-conviction claim that the "overhead" payments should be excluded from the restitution award. Matzdorff admitted that she misappropriated the victims' funds to pay expenses—including employee and operating expenses—unrelated to the victims' projects. In testifying about how she calculated and applied the "overhead" payments, Matzdorff did not specify how any particular "overhead" cost related or contributed to a victim's project. The court noted that when the evidence showed an allocation of employee time to a specific project for one of the victims—such as plan design or site supervision—the court credited those payments to Matzdorff and did not include them in the restitution award. The record supports the court's findings that the "overhead" payments arose from Matzdorff's commission of theft or fraud and that they did not provide benefit to the victims. Matzdorff's argument on review that she mischaracterized as "overhead" certain "general contractor" services does not alter the analysis.

¶16    Matzdorff also contends the ROC was not entitled to restitution. The claim does not withstand scrutiny. If a criminal defendant causes economic loss to a victim who is wholly or partially reimbursed for the loss by an insurer, victim compensation fund, or "any other entity," the superior court "shall order the defendant to pay the restitution to that entity." A.R.S. § 13-804(E). Matzdorff does not dispute that victim R.Z. received $30,000 from the ROC's Residential Contractors' Recovery Fund as compensation for a loss caused by Matzdorff. Contrary to her argument,

there is no requirement that the ROC's entitlement to restitution depends on its participation in the restitution proceeding. The superior court appropriately exercised its statutory authority to award restitution to the ROC. *Cf. State v. Leal*, 248 Ariz. 1, 3–5, ¶¶ 10–11, 14 (App. 2019) (upholding restitution award to non-victim payor of victim's funeral expenses and observing that the court may award restitution to a non-victim entity when that entity reimburses a victim's economic loss).

## CONCLUSION

¶17        For all these reasons, we grant review and deny relief.



AMY M. WOOD • Clerk of the Court
FILED:     AA